O

# United States District Court
# Central District of California

H.L.,

               Plaintiffs,

   v.

COUNTY OF LOS ANGELES,

               Defendants.

Case № 2:25-cv-05642-ODW (SKx)

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [26]**

## I.     INTRODUCTION

This action arises from the overdose death of Decedent Daejon Morgan while in custody.  (First Am. Compl. ("FAC"), Dkt. No. 22.)  Plaintiffs H.L., D.L.[1], Cleavotta Morgan, and David Morgan, all Morgan's family members, now bring this action against Defendants the County of Los Angeles, Kazeem Abass, Nchegem Orji, Salma Zubair, and several Does, alleging Constitutional and statutory violations.  (*Id.*)  Defendants move to dismiss.  (Mot. Dismiss ("Motion" or "Mot."), Dkt. No. 26.)  For the reasons below, the Court **GRANTS IN PART** Defendants' Motion.[2]

---

[1] H.L. and D.L. are Morgan's minor children and bring this action both individually and representatives of Morgan's estate.  (FAC ¶¶ 14–16.)  They are represented by their court-appointed guardian ad litem ("GAL"), Tiiesha Lane.  (Order GAL, Dkt. No. 17.)

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND[3]

The County of Los Angeles, through non-party Los Angeles County Sheriff's Department, runs Twin Towers Correctional Facility and other jails in its system. (FAC ¶¶ 19–20.)  In 2023, twelve inmates died of drug overdoses in the County's jail system. (*Id.* ¶ 28.)  In June 2024, six inmates at Twin Towers alone were taken to the hospital after being exposed to fentanyl.  (*Id.* ¶ 29.)  On April 30, 2024, a Sheriff's deputy was arrested and charged with smuggling drugs into the County's jails.  (*Id.* ¶ 32.)  And on October 8, 2024, eight inmates in a County jail suffered drug overdoses, leading to the County's jail staff administering Narcan—an anti-opioid drug—to 187 people.  (*Id.* ¶¶ 30–31.)

On October 14, 2024, Morgan, who was in custody at Twin Towers Correctional Facility, ingested a pill that he obtained from another inmate.  (*Id.* ¶¶ 36–37.)  Deputies later found Morgan exhibiting signs of opioid overdose and administered Narcan before contacting jail medical staff.  (*Id.* ¶ 38.)  Abass, a nurse employed by the County at Twin Towers, provided Morgan with medical care and sent him to Los Angeles County Medical Center for further medical care.  (*Id.* ¶¶ 21, 39.)  The same day, Abass re-evaluated Morgan and deemed him fit to go back to his jail cell.  (*Id.* ¶ 40.)  However, Abass recognized that Morgan needed additional medical follow-up and noted that Morgan should follow up with the "jail MD."  (*Id.* ¶ 41.)  Abass did not actually set a follow-up appointment with a medical doctor and instead set an appointment with a mental health provider for the following day.  (*Id.* ¶ 42.)

On October 15, 2024, Orji, a nurse practitioner employed by the County at Twin Towers, evaluated Morgan for ongoing mental health treatment.  (*Id.* ¶¶ 22, 43.)  However, there is no documentation of whether Morgan and Orji discussed the overdose or whether Orji provided any treatment related to the overdose.  (*Id.* ¶ 45.)

---

[3] All factual references derive from H.L.'s First Amended Complaint unless otherwise noted.  H.L.'s well-pleaded factual allegations are accepted as true for purposes of resolving the Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On October 16, 2024, Morgan complained to jail staff about ongoing headaches. (*Id.* ¶ 47.) A nurse sent Morgan to jail urgent care, where Dr. Zubair, a doctor employed by the County at Twin Towers, evaluated him. (*Id.* ¶¶ 47–48.) Dr. Zubair noted Morgan complained about neck pain stemming from a fall on the same day as Morgan's overdose, but otherwise did not mention Morgan's overdose in her notes. (*Id.* ¶ 48.) When Dr. Zubair recommended Morgan undergo a CT scan of his neck, Morgan refused. (*Id.*)

On October 30, 2024, at around 7:15 p.m., Morgan was on a phone call with his mother when he suddenly went silent. (*Id.* ¶ 56.) Morgan's cellmates attempted to administer Narcan and signaled to Sheriff's deputies that Morgan needed medical assistance. (*Id.* ¶ 57.) At approximately 7:22 p.m., the first Sheriff's deputy arrived and began medical treatment. (*Id.* ¶ 58.) Morgan was pronounced dead at 7:42 p.m. (*Id.* ¶ 64.)

Based on these allegations, Morgan's children, Plaintiffs H.L. and D.L., and Morgan's parents, Plaintiffs Cleavotta and David Morgan, assert nine causes of action against Abass, Orji, and Zubair (the "Individual Defendants"); the County of Los Angeles; and ten Doe Defendants. (*Id.* ¶¶ 65–148.) Plaintiffs bring six causes of action under 42 U.S.C. § 1983: (1) deliberate indifference to dangerous conditions of confinement; (2) failure to provide medical care; (3) failure to train under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978); (4) unconstitutional custom, practice, or policy under *Monell*; (5) ratification under *Monell*; and (6) interference with familial relations. (*Id.* ¶¶ 65–121.) Plaintiffs also assert three state law causes of action: (7) negligence; (8) violation of the Bane Act; and (9) failure to summon medical care under California Government Code section 845.6. (*Id.* ¶¶ 122–48.) Defendants now move to dismiss all claims. (Mot.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable theory or insufficient facts pleaded to support an otherwise cognizable theory.

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones,* 319 F.3d 482, 494 (9th Cir. 2003). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated differently, the complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Determining whether a complaint states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court limits its review to the pleadings and must construe all factual allegations in the complaint "as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds as recognized by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend, unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.    DISCUSSION

Defendants move to dismiss Plaintiffs' First Amended Complaint. (Mot.)

4

## A.      Section 1983 Causes of Action

Plaintiffs bring six causes of action under 42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must prove that (1) they were "deprived of a right secured by the Constitution or laws of the United States," and (2) "the alleged deprivation was committed under color of state law."  *March v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

The issue of whether Defendants acted under color of state law is not at issue. (*See generally* Mot.; Opp'n.)  Therefore, the Court focuses its analysis on whether Plaintiffs plausibly alleges that Defendants deprived them of any particular constitutional guaranty.

### 1.      Deliberate Indifference (Counts 1–2)

Plaintiffs bring two separate claims deliberate indifference under the Fourteenth Amendment: (1) deliberate indifference to dangerous conditions of confinement, and (2) deliberate indifference to the need for medical care.  (FAC ¶¶ 65–90.)  "Deliberate indifference requires a substantial showing." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 636 (9th Cir. 2021).  The four elements of a deliberate indifference claim are:

i.    the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

ii.    those conditions put the plaintiff at substantial risk of suffering serious harm;

iii.    the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

iv.    by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that

will necessarily turn on the facts and circumstances of each particular case." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (citation modified). "[M]ere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (citation modified). "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard," *Gordon*, 888 F.3d at 1125 (citation modified), and the "reckless disregard standard is a formidable one," *Fraihat*, 16 F.4th at 636 (citation modified).

(a)   Dangerous conditions (Count 1)

In their first cause of action, Plaintiffs allege that several Doe Defendants were deliberately indifferent to the dangerous conditions of Morgan's confinement. (FAC ¶¶ 65–72.) Specifically, Plaintiffs claim that the Doe Defendants knew of the proliferation of smuggled and dangerous drugs in Twin Towers but failed to take reasonable measures to abate this risk, causing Morgan's overdose. (*Id.* ¶¶ 66–69, 71.)

The Court finds that Plaintiffs have alleged sufficient facts, taken as true, to plausibly establish a claim for deliberate indifference to dangerous conditions. Plaintiffs plausibly allege that Doe Defendants knew, or at least should have known, of the proliferation of dangerous drugs in their jail system. Specifically, Plaintiffs allege a pattern of drug overdoses in the County's jail system while Morgan was incarcerated at Twin Towers. (*See id.* ¶¶ 28–32.) Plaintiffs also plausibly allege that there were reasonable measures, such as screening jail deputies or utilizing body scanners, that Doe Defendants could have taken but failed to do. (*Id.* ¶ 34.)

As Plaintiffs note in their opposition brief, (Opp'n 4, Dkt. No. 29), Defendants do not substantively address this specific cause of action and instead devote most of their argument to Plaintiff's allegations regarding deliberate indifference to medical care, (Mot. 7–8). The only argument that Defendants make regarding this cause of action is that "[t]here are no facts alleged that show that there were preventable measures, or actions by County Defendants that show knowledge of the claimed

dangerous conditions." (*Id.* at 7.)  However, this is plainly belied by the record.  It is more than reasonable to infer, based on the pattern of drug incidents alleged in the First Amended Complaint, that Doe Defendants knew of the dangerous conditions in their jails and failed to prevent them.  (*See* FAC ¶¶ 28–32.)  Indeed, this alleged pattern—including one sheriff arrested for smuggling the drugs himself—plausibly paints a picture of jailers that have abdicated their duty to keep conditions of confinement safe for their inmates.

Thus, the Court **DENIES** the Motion as to Plaintiffs' first cause of action.

(b)   Medical care (Count 2)

In their second cause of action, Plaintiffs allege that Individual Defendants were deliberately indifferent to Morgan's need for medical care.  (FAC ¶¶ 73–90.)  In the context of medical care, "neither mere lack of due care, nor an inadvertent failure to provide adequate medical care, nor even medical malpractice, without more, is sufficient to meet" the reckless disregard standard.  *Fraihat*, 16 F.4th at 636 (citation modified).  "Instead, a plaintiff must show that the defendant 'disregard[ed] an excessive risk' to the plaintiff's health and safety by failing to take 'reasonable and available measures' that could have eliminated that risk."  *Id.* (quoting *Castro*, 888 F.3d at 1071–71).

Plaintiffs' allegations against Individual Defendants do not meet this formidable standard.  First, Plaintiffs' allegations against Abass do not amount to "lack of due care," much less "reckless disregard."  *Fraihat*, 16 F.4th at 636.  Plaintiffs allege that Abass, a nurse, dutifully sent Morgan to a hospital for higher level care after evaluating him immediately post-overdose.  (FAC ¶ 39.)  Once Morgan returned from the hospital where Morgan was presumably evaluated by doctors, Abass not only re-evaluated Morgan a second time, but also "recognized the need for additional follow-up" and referred Morgan for a visit with the jail doctor.  (*Id.* ¶¶ 40–41.)  And while Plaintiffs allege that Abass "failed to make any follow-up appointment" for Morgan, Morgan

nonetheless saw both a nurse practitioner and a doctor in the coming days. (*See id.* ¶¶ 43, 48.)

Second, Plaintiffs' allegations against Orji also fall short. Plaintiffs allege that Orji evaluated Morgan's mental health, but that Orji failed to document any discussion about the overdose or provide any opiate withdrawal treatment. (FAC ¶ 45.) Even taken as true, these facts do not sufficiently state a claim for deliberate indifference. These facts do not demonstrate how Orji treated Morgan, and thus, the Court is unable to evaluate whether Plaintiffs' allegations regarding Orji's treatment meet the reckless disregard standard and raise "a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Finally, Plaintiffs' allegations against Zubair also do not even amount to "lack of due care," much less reckless disregard. *Fraihat*, 16 F.4th at 636. Plaintiffs allege that Morgan went to urgent care complaining of neck pain. (FAC ¶ 47.) Zubair, who was the physician in the jail urgent care, "noted complaints of neck pain resulting from a fall from bed on October 14" and "recommended a[] CT scan of Morgan's neck," which Morgan refused. (*Id.* ¶ 48.) These facts, taken in the light most favorable to Plaintiffs, demonstrate only that Zubair attempted to treat Morgan's complaint, and that Morgan rebuffed Zubair's attempts. While Zubair "made no other recommendations or referrals for follow up treatment," that failure to do so does not approach reckless disregard, especially considering that Morgan refused the treatment that Zubair did recommend.

For these reasons, the Court **GRANTS** the Motion and **DISMISSES** Plaintiffs' second cause of action. The Court dismisses the cause of action as to Abass and Zubair **WITHOUT LEAVE TO AMEND** because Plaintiffs' own allegations demonstrate that Abass's and Zubair's actions do not rise to the level of deliberate indifference. *See Schreiber Distrib.*, 806 F.2d at 1401 (finding denial of leave to amend proper when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency"). The Court dismisses the cause of

action as to Orji **WITH LEAVE TO AMEND** because dismissal is due to lack of factual sufficiency.

*2.* Monell *Claims (Counts 3–5)*

Plaintiffs claim the County is liable for Morgan's death under *Monell* because the County (1) failed to adequately train Individual and Doe Defendants as to the risk of dangerous drugs, (2) maintained "unconstitutional policies, practices, and customs," and (3) ratified the Doe Defendants' conduct. (FAC ¶¶ 91–121.)

As a general matter, municipal liability is not available in § 1983 actions under a respondeat superior theory. *Monell*, 436 U.S. at 691. Liability attaches to a municipality only when the "execution of a government's policy or custom . . . inflicts the [constitutional] injury." *Id.* at 694. A plaintiff may establish municipal liability only if they plausibly show: (1) a city employee committed a constitutional violation "pursuant to a formal governmental policy" or a "longstanding practice or custom"; (2) the city employee who committed the violation was an official with "final policy-making authority"; or (3) an official with final policy-making authority "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citations modified); *see City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (recognizing that a municipality's failure to train its employees can be actionable as an improper "policy"). "[T]o withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of unlawful policies, conducts or habits." *Doe #1 M.L. v. San Bernardino Sheriff Dep't*, 753 F. Supp. 3d 1024, 1029–30 (C.D. Cal. 2024).

(a) Failure to Train (Count 3)

Plaintiffs claim the County is liable under *Monell*, first, for failing to train its employees regarding preventing the proliferation of drugs in the jails and treating overdoses. (FAC ¶¶ 91–102.)

A municipality's failure to train can serve as the basis for § 1983 liability in "limited circumstances," such as where its failure amounts to deliberate indifference. *City of Canton*, 489 U.S. at 387. Absent circumstances where a failure to train is expressed in actual written or oral policy, *see Bd. of Cnty. Cmm'rs v. Brown*, 520 U.S. 397, 407 (1997), a plaintiff ordinarily must demonstrate "[a] pattern of similar constitutional violations by untrained employees," *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Plaintiffs seem to advance two theories under this cause of action. First, Plaintiffs allege that the County failed to adequately train its jailers to keep drugs out of its jail system. (FAC ¶¶ 93, 96.) This, Plaintiffs have adequately pled. As the Court notes above, Plaintiffs have alleged a systemic drug problem in the County's jail system that plausibly infringes on constitutional rights. (*See id.* ¶¶ 28–32.) Every drug incident and overdose is another notch in a "pattern of similar constitutional violations," plausibly by employees that have not been adequately trained to keep drugs out of the County's jail system. *See Connick*, 563 U.S. at 62.

Second, Plaintiffs allege that the County failed to train its medical staff to treat drug abuse. (FAC ¶ 97.) This, Plaintiffs have not adequately pled. As noted above, the Court finds no plausible constitutional violation in the way Morgan was medically treated. Thus, there is no "pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. Moreover, Plaintiffs allegations supporting this theory are both conclusory and contradictory. Plaintiffs allege that medical staff require specialized medical training and list the skills the County's medical staff should learn. (*Id.* ¶ 97.) However, Plaintiffs fail to demonstrate that the County's medical staff lack these skills. Instead, Plaintiffs allege only that the County failed to train its medical staff to "ensure that an inmate that suffers an overdose receives *any* follow-up treatment to minimize the risk of a future overdose." (*Id.* ¶ 99.) But Plaintiffs' own facts plainly controvert that allegation, considering Plaintiffs admit that Abass did treat Morgan regarding the overdose by sending him to the hospital. (*Id.* ¶ 39–42.)

10

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion as to Plaintiffs' third cause of action. Specifically, the Court **DISMISSES** the third cause of action as to Plaintiffs' allegations that the County failed to train its medical staff to treat drug abuse **WITHOUT LEAVE TO AMEND**. However, the third cause of action survives to the extent that it alleges that the County failed to train its employees to prevent drug proliferation in jails.

(b)      Unconstitutional Custom, Practice, or Policy (Count 4)

Plaintiffs next claim the County is liable under *Monell* because it knowingly maintained, enforced, and applied "an official recognized county custom, policy, and practice of acting deliberately indifferent to" serious medical needs and widespread availability of illegal drugs in" County jails. (FAC ¶ 104.) Specifically, Plaintiffs identify eight alleged *Monell* violations.[4]

A municipality may be liable under *Monell* for express policies, informal policies, and policies of inaction. For a municipality to be liable for an improper express policy or custom under *Monell*, a plaintiff must show that the municipality has an express "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690; *see Waggy v. Spokane County*, 594 F.3d 707, 713–14 (9th Cir. 2010) (noting that a plaintiff must allege and prove an express policy exists to challenge an express municipal policy or custom).

---

[4] The eight alleged policies and practices are: (a) Failing to implement policies and procedures on basic symptom recognitions and assessment of inmates who are in medical distress and suffering from severe opiate withdrawals including symptoms of shortness of breath, fever, and compromise lung functioning; (b) Routinely failing to train detention and medical staff to ensure needed follow-up care is provided for life threatening medical conditions including prior drug overdoses; (c) Inadequately supervising, training, controlling, assigning, and disciplining employees including County Jail staff; (d) Routinely neglecting and ignoring gravely ill inmates and enabling the custom and practice of medically distressed inmates to rely upon themselves to seek emergency medical treatment; (e) Engaging in the custom and practice of discriminating against chronically ill inmates and withholding emergency medical treatment until an inmate is at a near-death condition; (f) Routinely preventing inmates access to medical doctors, due to a custom and practice of a failed booking policy; (g) Routinely denying to treat more severe co-morbid medical conditions due to a "*one condition at a time*" medical policy; and (h) Routinely failing to train correctional staff to take appropriate measures to ensure drugs are not smuggled into jail facilities. (*Id.*)

Although an official policy need not have "received formal approval through the body's official decisionmaking channels," a municipality cannot be liable under § 1983 unless an action taken under that express policy caused a constitutional tort. *Monell*, 436 U.S. at 691.

Of the eight policies and practices that Plaintiffs identify, only two describe *express* policies: "[r]outinely preventing inmates access to medical doctors, due to a custom and practice of a failed booking policy" and [r]outinely denying to treat more severe co-morbid medical conditions due to a '*one condition at a time*' medical policy." (FAC ¶¶ 104(f)–(g).)  These two policies are not sufficiently alleged.  Plaintiffs do not explain what the "failed booking policy" is; the assertion that it is a *Monell* violation is the only mention of a failed booking policy in the entire First Amended Complaint. (FAC ¶ 104(f).)  Thus, Plaintiffs fail to prove that the "failed booking policy" exists. *See Waggy*, 594 F.3d at 713–14.  Plaintiffs also fail to explain the "one condition at a time" medical policy or how it amounts to deliberate indifference, and thus, constitutional deficiency.  *Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018) (dismissing *Monell* claim because plaintiffs did "not explain how the alleged policies are deficient or reflect on how the custom or policy amounted to deliberate indifference").  For these reasons, Plaintiffs fail to state a claim based on an improper express policy.

Next, one of Plaintiffs' remaining six policies and practices describes a non-formal policy of action: "[e]ngaging in the custom and practice of discriminating against chronically ill inmates and withholding emergency medical treatment until an inmate is at a near-death condition."  (FAC ¶ 104(e).)  Absent a formal governmental policy, a plaintiff must show a longstanding practice or custom that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  An improper custom or practice claim "may not be predicated on isolated or sporadic incidents" but must instead "be founded upon practices of sufficient duration, frequency[,] and consistency that the conduct has

become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Here, however, Plaintiffs do not allege any facts to support a "custom and practice of discriminating against chronically ill inmates," (FAC ¶ 104(e)), much less any that come close to alleging that the "conduct has become a traditional method of carrying out policy," *Trevino*, 99 F.3d at 918. The factual allegations only discuss Morgan's medical care and the circumstances surrounding his death. This single instance does not give rise to a plausible inference that a pattern of discrimination against chronically ill inmates exists. *See Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021) (holding that a single incident of constitutional violation is not sufficient to establish improper custom). Thus, Plaintiffs fail to state a claim based on an improper non-formal policy of action.

Finally, Plaintiffs' remaining five "policies and practices" describe policies of inaction, rather than policies of action. (FAC ¶¶ 104(a)–(d), (h).) "[A] policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)). Plaintiffs must first show that the "policy 'amounts to deliberate indifference' to the plaintiff's constitutional right." *Tsao*, 698 F.3d at 1143 (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). Similar to a deliberate indifference cause of action, a plaintiff must demonstrate that the defendant "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Jackson*, 749 F.3d at 763 (quoting *Tsao*, 698 F.3d at 1145). Plaintiffs must then show that "the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." *Id.* (quoting *Tsao*, 698 F.3d at 1143).

Of the five policies and practices describing policies of inaction, three allege that the County failed to implement appropriate procedures regarding medical care. (FAC ¶¶ 104(a)–(b), (d).) The Court already found that Plaintiffs' allegations of deliberate indifference with regards to Morgan's medical care are deficient. Instead, the factual

allegations demonstrate that, even in the light most favorable to Plaintiffs, the County's medical staff exercised due care. As Plaintiffs provide no other allegations relating to the County's medical staff providing care, the Court also finds that Plaintiffs fail to state a claim that the County was deliberately indifferent to the risk of overdose.

This leaves two remaining policies of inaction. The first, alleging that the County failed to supervise, train, control, assign, and discipline employees, is too vague to state a claim. (FAC ¶ 104(c).) It is unclear what specifically the County failed to do, and how it led to a violation of Morgan's constitutional rights. Thus, it fails due to lack of specificity. *Iqbal*, 556 U.S. at 678.

However, the last remaining policy of inaction—that the County "[r]outinely fail[ed] to train correctional staff to take appropriate measures to ensure drugs are not smuggled into jail facilities"—is sufficiently pleaded for the same reasons that Plaintiff sufficiently pleaded the third cause of action, failure to train. (FAC ¶ 104(h).) Specifically, the factual allegations detail a pattern of drug incidents and overdoses, lead to the plausible inference that the County had "actual or constructive notice" that its failure to address the issue of drug proliferation "would likely result in a constitutional violation." *Jackson*, 749 F.3d at 763. Further, as noted earlier, Plaintiffs adequately allege that the County "could have prevented the violation" through further training and oversight of its jailers. *Id.* Thus, the Court finds that Plaintiffs plausibly allege this policy of inaction as a potential *Monell* violation.

For these reasons, the Court **GRANTS IN PART and DENIES IN PART** the Motion as to Plaintiffs' fourth cause of action. Specifically, the Court **DISMISSES** the fourth cause of action **WITH LEAVE TO AMEND**, except to the extent Plaintiffs premise it on the County's routine failure to train jail staff to stop drug proliferation, which survives dismissal. (FAC ¶ 104(h).)

        (c)     <u>Ratification (Count 5)</u>

Plaintiffs' last *Monell* claim is based on ratification. A municipality may be liable under § 1983 when "an official with final policy-making authority ratified a

subordinate's unconstitutional decision or action and the basis for it." *Gillette*, 979 F.2d at 1346–47.

Here, Plaintiffs' fourth cause of action fails because it is vague and conclusory. First, Plaintiffs allege that the County and Doe Defendants ratified improper policies through an "Inter-Disciplinary Mortality Review." (FAC ¶ 111.)  However, Plaintiffs provide no facts alleging what this Review is.  Thus, the Court cannot ascertain how the County and Doe Defendants allegedly ratified improper policies.  Second, Plaintiffs allege that several Doe Defendants "ratified the defendants' conduct." (*Id.*)  However, it is unclear what exact conduct Doe Defendants ratified.  Further, Plaintiffs allege that Doe Defendants acted with "the complete authority and ratification of their principal," the County, (*id.* ¶ 26), which means that they necessarily lack "final policy-making authority" sufficient for ratification liability, *Gillette*, 979 F.2d at 1346–47.

For these reasons, the Court **GRANTS** the Motion and **DISMISSES** Plaintiffs' fifth cause of action.  The Court dismisses the cause of action **WITH LEAVE TO AMEND** only as to the claim against the County, and **WITHOUT LEAVE TO AMEND** as to the claim against the Doe Defendants.

### 3. *Interference with Familial Relations (Count 6)*

Plaintiffs' sixth cause of action asserts interference with familial relations under the Fourteenth Amendment.  (FAC ¶¶ 114–21.)  Specifically, Plaintiffs argue that Individual and Doe Defendants' actions interfered in Plaintiffs' familial relationship with Morgan.  (*Id.*)

The Fourteenth Amendment confers a "substantive due process right to family integrity or to familial association." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011).  To state a claim for interference with familial relations, a plaintiff must allege that state actors engaged in conduct that "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  Where "actual deliberation is practical," a state actor's conduct is conscience-shocking when they act with deliberate indifference. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  A state actor acts

15

with deliberate indifference when they "recognize[] the unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1158 (9th Cir. 2021) (alterations in original).

First, as the Court finds that Plaintiffs do not adequately allege deliberate indifference against Individual Defendants in Plaintiffs' second cause of action, the Court also finds that Plaintiffs do not adequately allege that Individual Defendants engaged in conscience-shocking conduct. Second, as the Court finds that Plaintiffs do adequately allege deliberate indifference against Doe Defendants in Plaintiffs' first cause of action, the Court also finds that Plaintiffs adequately allege that Doe Defendants engaged in conscience-shocking conduct. Specifically, Plaintiffs' allegations, which support that Doe Defendants were deliberately indifferent to the issue of the proliferation of dangerous drugs, also support the inference that Doe Defendants actually knew of and consciously disregarded the risk that proliferation of dangerous drugs posed to Morgan's familial rights. *See Herrera*, 18 F.4th at 1158–59 ("[A] state actor needs to know that something is going to happen but ignore the risk and expose the plaintiff to it." (citation modified)).

For these reasons, the Court **GRANTS IN PART and DENIES IN PART** the Motion as to the sixth cause of action. Specifically, the Court **DISMISSES** Plaintiffs' sixth cause of action as to Orji **WITH LEAVE TO AMEND,** and as to Abass and Zubair **WITHOUT LEAVE TO AMEND**. However, the sixth cause of action survives against Doe Defendants.

**B.     State Causes of Action**

Plaintiffs' remaining causes of action are brought under state law.

*1.     Negligence (Count 7)*

Plaintiffs' seventh cause of action asserts negligence against Doe Defendants and the County. (FAC ¶¶ 122–30.) Defendants only move to dismiss the cause of action as brought against the County. (Mot. 11–12.)

California Government Code section 815(a) "bars all nonstatutory, common-law tort causes of action against public entities."  Courts have noted that there is "no statutory basis under California law for declaring [a governmental] entity directly liable for negligence."  *Johnson v. Shasta County*, 83 F. Supp. 3d 918, 936 (E.D. Cal. 2015).  Indeed, Plaintiffs concede that their direct-liability negligence claims against the County are not cognizable under California law absent statutory authorization. (Opp'n 9.)  Thus, the Court **GRANTS** the Motion and **DISMISSES** Plaintiffs' seventh cause of action **WITHOUT LEAVE TO AMEND** as to **only** the County.  The cause of action survives against Doe Defendants.

### 2.    Bane Act (Count 8)

To state a Bane Act cause of action, a plaintiff must show that the defendant interfered with their constitutional rights "by threat, intimidation, or coercion."  Cal. Civ. Code § 52.1(b).  Unlike a § 1983 cause of action, the Bane Act requires a plaintiff to prove the defendant acted with specific intent to interfere with the plaintiff's rights. *Reese v. County of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018).  Specific intent may be shown through evidence that the defendant acted in "reckless disregard" of the plaintiff's constitutional rights. *Id.* at 1045.

Plaintiffs fail to state a Bane Act cause of action.  The crux of Plaintiffs' claim is that Individual and Doe Defendants recklessly disregarded Morgan's potential medical needs.  The Court has explained how Plaintiffs fail to plead that Morgan's medical care was deficient and that Individual Defendants recklessly disregarded Morgan's medical needs.  For the same reasons, Plaintiffs fail to plead that Defendants specifically intended, through reckless disregard or otherwise, to deprive Morgan of his constitutional rights by disregarding his potential medical needs.

For these reasons, the Court **GRANTS** the Motion and **DISMISSES** Plaintiffs' eighth cause of action as to Doe Defendants and Orji **WITH LEAVE TO AMEND**, and as to Abass and Zubair **WITHOUT LEAVE TO AMEND**.

### 3.    *Failure to Summon Medical Care (Count 9)*

Plaintiffs bring their ninth cause of action under California Government Code section 845.6.    (FAC ¶¶ 144–48.)    This section authorizes suits against public employees or entities if a public employee "knows or has reason to know that the prisoner is in need of immediate medical care" and "fails to take reasonable action to summon such medical care."   Cal. Gov't Code § 845.6.   Plaintiff asserts this cause of action against Individual and Doe Defendants and also contends that the County is vicariously liable.   (FAC ¶ 147.)

In their Motion, Defendants assert they are immune because California Government Code section 815(a) "bars all nonstatutory, common-law tort causes of action against public entities." (Mot. 11–12.)   However, section 845.6 clearly carves out an exception for a public entity's failure to summon medical care "where the [tortfeasor] employee is acting within the scope of his employment."   Defendants' citation to California Government Code section 844.6 fares no better.   (Mot. 11–12.)   While section 844.6 states that a public entity is not liable for a prisoner's injuries, it is expressly subject to the exception quoted above from section 845.6.   *See* Cal. Gov't Code § 844.6(a) ("[E]xcept as provided in . . . [section] 845.6 . . . a public entity is not liable for" a prisoner's injuries.).   Thus, neither section Defendant cites forecloses Plaintiffs' failure to summon medical care claim.

Seemingly recognizing this, in their Reply brief, Defendants appear to convert their immunity argument into a lack of factual sufficiency argument.   (Reply 6, Dkt. No. 30.)   As Defendants did not raise this argument in their Motion, the Court declines to consider it.   *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

For these reasons, the Court **DENIES** Defendants' Motion as to Plaintiffs' ninth cause of action.

18

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.  (Dkt. No. 26.)  Specifically, the Court:

- **DISMISSES** Plaintiffs' second cause of action **WITH LEAVE TO AMEND** as to Orji and **WITHOUT LEAVE TO AMEND** as to Abass and Zubair;

- **DISMISSES** Plaintiffs' third cause of action **WITHOUT LEAVE TO AMEND only** as to allegations that the County failed to train its medical staff to treat drug abuse;

- **DISMISSES** Plaintiffs' fourth cause of action **WITH LEAVE TO AMEND** as to every policy alleged except the alleged policy of inaction that the County failed to "train correctional staff to take appropriate measures to ensure drugs are not smuggled into jail facilities," which survives Defendants' Motion (FAC ¶ 104(h));

- **DISMISSES** Plaintiffs' fifth cause of action **WITH LEAVE TO AMEND** as to the County and **WITHOUT LEAVE TO AMEND** as to Doe Defendants;

- **DISMISSES** Plaintiffs' sixth cause of action **WITH LEAVE TO AMEND** as to Orji and **WITHOUT LEAVE TO AMEND** as to Abass and Zubair, but **not** as to Doe Defendants, against whom the cause of action survives Defendants' Motion;

- **DISMISSES** Plaintiffs' seventh cause of action **WITHOUT LEAVE TO AMEND only** as to the County;

- **DISMISSES** Plaintiffs' eighth cause of action **WITH LEAVE TO AMEND** as to Doe Defendants and Orji and **WITHOUT LEAVE TO AMEND** as to Abass and Zubair; and

- **DENIES** Defendants' Motion as to Plaintiffs' first and ninth causes of action.

The following causes of action survive the Motion: (1) Count 1 for deliberate indifference to dangerous conditions against Doe Defendants; (2) Count 3 for failure to

train to prevent proliferation of drugs in jails against Doe Defendants; (3) Count 4 for an unconstitutional custom, practice, or policy, specifically, as to the County and its alleged failure to train correctional staff to prevent drug proliferation; (4) Count 6 for interference with familial relations against Doe Defendants; (5) Count 7 for negligence against Doe Defendants; and (6) Count 9 for failure to summon medical care against Individual and Doe Defendants.

Plaintiffs must file an amended complaint by **FEBRUARY 3, 2026**, in which case Defendants shall answer or otherwise respond within **fourteen (14) days** of Plaintiffs' filing.  If Plaintiffs do not timely amend, then the causes of action and claims the Court dismisses with leave to amend shall be deemed dismissed with prejudice as of the lapse of Plaintiffs' filing deadline.  In that event, Defendants shall answer the surviving claims in the First Amended Complaint within **fourteen (14) days** of the lapse of Plaintiffs' filing deadline.

**IT IS SO ORDERED.**

January 20, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**